**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 05-cv-01818-MSK

UNITED STATES OF AMERICA,

                Petitioner,

      v.

IRIZARRY & McCALL, P.C. through
Raymond D. McCall,

                Respondent.

---

**OPPOSITION TO PETITION TO ENFORCE INTERNAL REVENUE SUMMONSES**

---

**INTRODUCTION**

      The government seeks judicial enforcement of two third-party summonses that the Internal Revenue Service ("IRS") issued to the Denver firm of Irizarry & McCall, P.C. ("the Law Firm"). Neither the Law Firm nor its clients is the subject of the IRS investigation. The Law Firm nonetheless provided voluminous records and Raymond D. McCall, Esq. provided thorough testimony regarding the transactions at issue. The Law Firm raised appropriate objections and explained why it was withholding limited information private to its clients who are not themselves under investigation. The government now petitions this Court to compel the Law Firm to disclose the withheld information. The Court should deny the government's petition because the government has not demonstrated that this private information is even potentially relevant to determining the taxpayer's liability.

115513

## STATEMENT OF FACTS

A.    The Law Firm.

The Law Firm is a Denver firm founded in 1991.  Mr. McCall has more than 25 years' legal experience, and previously was a partner with the Denver firm of Rothgerber, Johnson and Lyons.  Since the Law Firm's founding, including during the time period at issue, Mr. McCall generally has not provided tax advice but has instead limited his practice to corporate law matters.

B.    The Law Firm's Clients.

In 1997 and 1998, the Law Firm represented Mr. Dag Sundby and his entities ("the Sundby entities") in connection with a stock acquisition and sale of a beneficial interest.  Mr. Sundby, a citizen and resident of Norway, owned the beneficial interest in Suntrust Revocable Trust ("SRT").  SRT, in turn, owned the entire membership interest in Sonicvest, LLC ("Sonicvest").

C.    The IRS Investigation.

The IRS is not investigating the Law Firm, Mr. Sundby or the Sundby entities.  The Law Firm nonetheless was served with two third-party summonses in connection with an IRS investigation of John C. (Christopher) Cohan and his entities.

Mr. Cohan's entities owned substantial properties, including valuable cable television assets and the Golden State Warriors' NBA franchise.  Mr. Cohan originally held these assets through Sonic Enterprises, Inc., and its subsidiaries ("Sonic").

The cable television assets ultimately were sold by Sonic to Charter Communications ("Charter"), a publicly-traded company. Mr. Cohan, however, had sold his Sonic stock prior to Sonic's sale of its assets. The IRS apparently is investigating whether Mr. Cohan is liable as a transferee for certain tax obligations of Sonic.

Mr. Cohan sold the Sonic stock to Sonicvest. Sonicvest paid Mr. Cohan some $200 million, consisting of a $3 million cash downpayment with the remainder financed by a large international financial institution (Rabobank Nederland).

Sonicvest was owned by SRT, which in turn was owned by Mr. Sundby. After Sonicvest acquired the Sonic stock, Mr. Sundby sold the beneficial interest in SRT to SV Acquisition LLC ("SV Acquisition"). SV Acquisition was not affiliated with Mr. Sundby and was managed by the Diversified Group Incorporated ("Diversified").

When it recognized the income apparently in question, Sonic no longer was owned by a Sundby. Prior to that time, Sundby's entity had transferred ultimate ownership of the Sonic stock to an unrelated entity (SV Acquisition). The Law Firm, which provided corporate legal representation only to the entities controlled by Sundby, did not offer tax opinions or tax advice to anyone. Tax opinions regarding aspects of the transactions were issued by other law and accounting firms.

The IRS apparently has determined that Sonic is liable for certain taxes. The investigation apparently now is focused on whether Mr. Cohan is also liable as a transferee for those Sonic taxes.

  D. <u>The Law Firm's Much More Than "Limited" Compliance
With The IRS Third-Party Summonses</u>.

The government's memorandum and the accompanying IRS declaration claim that the Law Firm (through Mr. McCall) provided only "limited" testimony in response to the IRS summonses. <u>See</u> Doc. 2 at 3, 11; Doc. 3 at p.7 ¶ 13. These claims could have been made only by disregarding the testimonial transcript, which the government inexplicably failed to attach to its petition. That transcript is attached hereto as Exhibit C.

The transactions bearing on Mr. Cohan's tax liability apparently include: 1) Mr. Cohan's sale of Sonic stock to a Sundby entity (Sonicvest); 2) the sale by Sundby of the beneficial interest in SRT to a non-Sundby entity (SV Acquisition); and 3) receipt of income by Sonic in return for sale of its assets to Charter when it was owned by SV Acquisition. The 118-page transcript of the more than four hour interview shows that Mr. McCall provided detailed testimony on these transactions. Mr. McCall testified at length regarding the first transaction (the stock purchase). <u>See</u>, <u>e.g.</u>, Exhibit C at 27-42, 50-64. Likewise, Mr. McCall provided detailed testimony regarding the second transaction (sale of the beneficial interest). <u>See</u>, <u>e.g.</u>, <u>id.</u> at 42-50, 64-65, 107-15. Although Mr. McCall knew little about the third category of transactions (not involving Sundby entities and occurring after the beneficial interest was sold to SV Acquisition), he did not withhold any information or documents pertaining thereto.

Additionally, the Law Firm produced three boxes of documents for IRS inspection prior to the interview. <u>See</u> Exhibit C at 7:2-5. From those three boxes, the IRS attorney conducting the review requested 154 pages that were copied and produced as Bates Numbered INT 1-154. <u>See</u> Exhibit C at 7:6-9.

The government's contentions that the Law Firm made only "limited" compliance with the summonses are at odds with the interview transcript. At the end of that interview and document production, the IRS attorney (Henry Thomas Schaefer, Esq.) stated:

> [O]n behalf of the Internal Revenue Service, thank you very much for the time you've given us. I realize it's an imposition, and you've been very helpful to us. I think the information you've been able to give us and the pointers you've supplied have been helpful, and we are grateful for the time you've spent.
>
> And, again, I know it's an imposition, and you did spend a lot of time on it, and we do appreciate that, and we also thank your counsel for his very open cooperation with us and his willingness to help.

Exhibit C at 118:8-17. IRS counsel reiterated his thanks, "we gained a lot." Id. at 118:22.

In comparison to the extensive testimony and documents provided by the Law Firm, the information withheld was quite limited. The withheld documents (Bates Numbered WH 1-94) pertained solely to Mr. Sundby's internal financing of the $3 million downpayment made by SRT to Cohan for Sonicvest's purchase of the Sonic stock. Exhibit C at 7:13-21. Mr. McCall did testify, however, that he had personal knowledge of Mr. Sundby's source of funds and that the Sundby funds did not come from Mr. Cohan or any entity owned or related to him. Id. at 73:2-74:5. Mr. McCall's affidavit confirms that the source of Mr. Sundby's $3 million was entirely independent of Mr. Cohan. Exhibit B (Affidavit of Raymond D. McCall), at ¶ 7. The only other area of testimony or documents that Mr. McCall declined to provide involved "the specifics of Mr. Sundby or other third parties in other transactions not involving Mr. Cohan or his entities." Exhibit C at 7:21-25. The Law Firm made clear its position that it was required under Colorado ethical rules to protect third-party client confidences that did not bear on a proper determination of the taxpayer's [i.e., Cohan's] liabilities. See id. at 6:17-22.

**ARGUMENT**

**I.     PRIVACY CONCERNS ARE HEIGHTENED WHERE IRS SUMMONSES LAW FIRMS REPRESENTING THIRD PARTIES NOT UNDER INVESTIGATION.**

The Supreme Court and Congress have recognized the "danger" that IRS "third-party summonses" of persons other than those under investigation "might 'unreasonably infringe on the civil rights of taxpayers, including the right to privacy.'" *Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310, 316 (1985) (quoting S. Rep. No. 94-938, p. 368 (1976); H.R. Rep. No. 94-658, p. 306 (1975)).  The privacy concerns are magnified where an IRS summons is addressed to a law firm even where, unlike here, the law firm itself is under investigation.  Accordingly, federal appeals courts have quashed IRS summonses to attorneys seeking client information that is not potentially relevant to determining liability of the taxpayers under investigation.  *See*, *e.g.*, *David H. Tedder & Assoc., Inc. v. United States*, 77 F.3d 1166, 1168 (9th Cir. 1996); *United States v. Gertner*, 65 F.3d 963, 968 (1st Cir. 1995).

The government's claims that the Law Firm here made only "limited" compliance with the IRS summonses (Doc. 2 at 3, 11; Doc. 3 at p.7 ¶ 13) are at odds with the transcript record that the government did not bother to provide to the Court.  <u>See</u> Exhibit C.  The Law Firm's withholding of limited information pertaining to its third party clients was consistent with its ethical responsibility to protect confidences of clients who are not themselves under investigation.  Protection of these client confidences was not, contrary to the government's mischaracterization (Doc. 2 at 13-15, citing *United States v. Blackman*, 72 F.3d 1418 (9th Cir. 1995)), an argument that state ethics rules "excuse" compliance with proper IRS investigative demands.  Instead, Colo. RPC 1.6 simply underscores the Law Firm's obligation to protect third-party client confidences that are not potentially relevant to an IRS investigation.

The government, in claiming entitlement to the withheld third party information, substitutes general legal platitudes for careful analysis. The Law Firm does not dispute that the controlling statute is phrased in terms of whether the requested information "may be relevant or material" (26 U.S.C. § 7602(a)) or that the Supreme Court has construed it "to allow the IRS to obtain items of even *potential* relevance to an ongoing investigation." *United States v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984). While this relevancy burden is "minimal," it is "not non-existent." *David H. Tedder & Associates*, 77 F.3d at 1168 (internal quotations omitted). There must be "'a reasonable expectation rather than an idle hope that something may be discovered.'" *United States v. City Nat'l Bank and Trust Co.*, 642 F.2d 388, 389 (10th Cir. 1981) (quoting *United States v. Harrington*, 388 F.2d 520, 524 (2d Cir. 1968)). Furthermore, "'judicial protection against the sweeping or irrelevant order is particularly appropriate where the demand for records is directed not to the taxpayer but to a third party who may have had some dealing with the person under investigation.'" *United States v. Coopers & Lybrand*, 550 F.2d 615, 621 (10th Cir. 1977) (quoting Fourth Circuit opinion, which in turn quoted *Harrington*). In third party cases, "the proper question … is 'whether from what the Government already knows there exists the requisite nexus between taxpayer and records of another's affairs to make the investigation reasonable….'" *City Nat'l Bank and Trust Co.*, 642 F.2d at 389 (quoting *Harrington*).

Here, as discussed immediately below, the withheld documents and testimony involved matters that were purely internal to third parties and not even potentially relevant to determining Mr. Cohan's tax liability. Accordingly, the Court should deny the government's petition.

II. **THE GOVERNMENT CANNOT OVERCOME THESE PRIVACY CONCERNS BECAUSE THE REQUESTED THIRD-PARTY INFORMATION IS NOT EVEN POTENTIALLY RELEVANT TO DETERMINING THE LIABILITY OF THE TAXPAYERS UNDER INVESTIGATION.**

    A.    <u>The Government Should Have The Burden Of Satisfying The Relevancy Standard Before An IRS Third-Party Summons Is Enforced</u>.

The ultimate burden of satisfying the relevancy standard should rest upon the government as the party seeking enforcement of IRS summonses. The IRS has no presumptive entitlement to private third-party information but instead is allowed access to such information only if it "may be relevant or material" to investigating a taxpayer. 26 U.S.C. § 7602(a). Accordingly, the leading Supreme Court cases in this area have stated that <u>the IRS</u> "must show" (among other things) that "the investigation will be conducted pursuant to a legitimate purpose, [and] that the inquiry may be relevant to the purpose…." *United States v. LaSalle National Bank*, 437 U.S. 298, 313-14 (1978) (quoting and following *United States v. Powell*, 379 U.S. 48, 57-58 (1964)).

Once the government makes a *prima facie* showing that the *Powell* factors have been met (as it did here by the IRS agent's conclusory declaration), the burden shifts to the summons recipient to produce evidence rebutting the government's averments. *United States v. Balanced Financial Mgmt.*, 769 F.2d 1440, 1444 (10th Cir. 1985). If the recipient meets its burden of production, a court determines whether and to what degree the IRS summons will be enforced. *See Coopers & Lybrand*, 550 F.2d at 620 (quoting *United States v. Bisceglia*, 420 U.S. 141, 146-47 (1975)).

The shifting burden of production should not, at least as to the relevance issue, relieve the government of the ultimate burden of proof. Federal Rule of Evidence 301 explains the legal effect of "Presumptions in General in Civil Actions and Proceedings" (with the text of the rule

itself covering "all civil actions and proceedings not otherwise provided for by Act of Congress or by these rules"). The rule provides that "a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast." Fed. R. Evid. 301. The Supreme Court's burden-shifting cases are in accord that establishing a *prima facie* case may shift the burden of production but not of ultimate persuasion. *See St. Mary's Honors Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (Title VII employment discrimination case).

The *Gertner* court, while not finally deciding whether this same principle should apply in an IRS summons enforcement context, was "hard-pressed to fathom why IRS enforcement proceedings should diverge from this principle. It is the IRS, not the taxpayer, that seeks to invoke the processes of the court." 65 F.3d at 968 (collecting cases). The need for the government to bear the ultimate burden of persuasion is especially true where, as here, it makes a *prima facie* case with nothing more than conclusory statements of relevancy and purpose. References in Supreme Court and Tenth Circuit opinions to a summons recipient's burden of refuting a *prima facie* case (e.g., *Powell*, 379 U.S. at 58; *Balanced Financial Mgmt.*, 769 F.2d at 1449) accordingly should be limited solely to the burden of production or of proving true affirmative defenses such as "a 'bad faith' defense" (*id.* at 1444).

The Law Firm here has demonstrated, as set forth below, that the requested information is private to third parties and not even potentially relevant to Mr. Cohan's tax liability. Enforcement accordingly should be denied because the Law Firm's showing suffices to rebut the government's *prima facie* case.

B.   **The Requested Information Is Purely Internal To Third Parties Not Under Investigation And Not Even Potentially Relevant To Determining The Liability Of The Cohan Taxpayers**.

The government claims entitlement to two types of information allegedly relevant to the Cohan investigation: 1) information regarding how the Law Firm's client, Mr. Sundby, raised the money to fund the $3 million downpayment to Mr. Cohan; and 2) information regarding third parties' involvement in other transactions not involving Mr. Cohan or his entities. The government's claims as to each should be rejected.

1.   **The IRS Is Not Entitled To Know How The Law Firm's Client (A Third Party Not Under Investigation) Funded The $3 Million Downpayment To Mr. Cohan**.

The internal particulars of how Mr. Sundby (who is not under investigation) raised money paid to Mr. Cohan is private information irrelevant to the Cohan investigation. Mr. McCall testified, and the accompanying affidavits confirm, that the $3 million was raised independently of Mr. Cohan. Exhibit C at 73:2-74:5; see also Exhibit A at ¶ 4, Exhibit B at ¶ 7. Thus, whether Mr. Sundby funded the $3 million from his own money or from money borrowed independently of Mr. Cohan has nothing to do with a proper determination of Cohan's liability.

The government has not demonstrated how Mr. Sundby's internal finances bear on Mr. Cohan's tax liability. It writes that:

> Cohan's tax liabilities depend in part in the form and substance of the intermediary transaction: how it was structured and executed, whether it actually occurred in accordance with the documentation, what relationships the participants (including Sundby, Sonicvest LLC, and Sundby's other entities) bore to one another, how and where the monies (including the $3 million [down payment from Mr. Sundby]) flowed, what and whose business purpose, if any, were served, whether the transaction had economic substance.

Doc. 2 at 11-12.

The Law Firm has provided information and testimony regarding the transactions. Specifically, the Law Firm produced documents, and Mr. McCall testified fully to the best of his knowledge and recollection, regarding: how the transaction was structured and executed, the relationships of the parties to each other, how and where the monies flowed, and the business purposes of the transaction.  See, e.g., Exhibit C at 27-65, 107-15.

The Law Firm thus provided full information regarding "where the monies (including the $3 million …) flowed." Doc. 2 at 11. What it objected to providing were the details of how Mr. Sundby raised the $3 million (other than to confirm that it was raised independently of Mr. Cohan) before it "flowed" to Mr. Cohan. The government's only argument as to why Mr. Sundby's funding is relevant to investigating Mr. Cohan's tax liability is that:

> The IRS needs to know about Sundby's "internal matters," such as his wherewithal to borrow the $3 million required by the intermediary transaction, in order to determine the legitimacy of the transaction. Sundby may have been engaging in a business transaction for profit, or he may have been a mere accommodation party who, for a fee, helped facilitate an abusive tax shelter transaction for Cohan.

Doc. 2 at 11 n.3.

The government's conclusory footnote cannot withstand scrutiny. There is no reason the "IRS needs to know about Mr. Sundby's 'internal matters'" to investigate Mr. Cohan's tax liabilities. Mr. Cohan's tax liability does not turn on Mr. Sundby's "wherewithal to borrow the $3 million": the undisputed fact that Mr. Sundby raised the $3 million independently of Mr. Cohan is conclusive of his "wherewithal." Finally, the fact that Mr. "Sundby may have been engaging in a business transaction for profit" (admittedly, he was) is not nefarious and has nothing to do with Mr. Cohan's tax liability.

        2.        <u>The IRS Has No Legal Right To Investigate Third Parties And Unrelated Transactions As Part Of An Investigation Of A Different Taxpayer.</u>

The government, perhaps realizing the tenuousness of its relevancy argument as to Mr. Sundby's internal finances, advances the broad legal position that the IRS is entitled to investigate third-party transactions "not involving Cohan." Doc. 2 at 12. It avers that Mr. Cohan's alleged "investment advisors, KPMG, Presidio Advisors, and Diversified Group, have been identified in other court filings as promoters of potentially abusive tax shelters" (*id.* at 2), so "information about [their] other transactions thus may shed light on" the Cohan investigation. *Id.* at 12.

The government cites no case law allowing the IRS to investigate conduct of third parties in other transactions in order to determine a taxpayer's liability in a separate transaction. Instead, it relies on inapposite cases that do not even involve IRS summonses. The government cites cases for the purported point that "evidence related to patterns, similar transactions, other investor transactions, and activities of promoters and related entities" may be admissible in tax cases. Doc. 2 at 12. The cited cases do not support the government's position here.

The Ninth Circuit cases cited by the government allowed courts to examine an overall tax "program" to determine the liability of taxpayers participating in that program. Thus, in *Sochin v. C.I.R.*, 843 F.2d 351 (9th Cir. 1988), the issue was whether a taxpayer properly claimed losses from commodities transactions that "were part of an investment program promoted by" a company. *Id.* at 352. The Ninth Circuit held that the tax court properly "admitted evidence of other investor transactions in the [same] program." *Id.* at 355. It explained that "consideration of the entire investment program directly relates to the analysis of Taxpayers['] probable economic benefits." *Id.* Similarly, in *Karme v. C.I.R.*, 673 F.2d 1062 (9th Cir. 1982), the Ninth

Circuit upheld the tax court's evidentiary ruling allowing testimony regarding a tax shelter promoter's offshore tax scheme. The court held that "[a]lthough the testimony did not relate to the particular transaction giving rise to the deficiency, it did tend to establish a pattern or practice of tax planning of which this transaction was a part, and it was within the tax court's discretion to admit." *Id.* at 1064 (citing Fed. R. Evid. 406).

Unlike these Ninth Circuit cases, in which the transaction was part of a "program," the Cohan transaction was a complex and heavily-lawyered one that should stand or fall on its own.[1] There is no allegation that Mr. Cohan – much less Mr. Sundby (whose privacy rights are at issue here) – was part of any "program." And, the IRS apparently has already determined that Sonic should have paid taxes on the sale of its assets. To evaluate the tax consequences of that transaction, the IRS does not need to violate Mr. Sundby's privacy rights. If the IRS wants information about other KPMG, Presidio, or Diversified transactions, it should seek it in an investigation of those third parties instead of under the guise of investigating Mr. Cohan.

The more analogous Ninth Circuit case is *David H. Tedder & Associates*. In declining there to enforce an IRS summons, the court held that client-identifying information was not relevant, even where the clients participated in the transactions under investigation. Here, the client information has even less potential relevance than in *Tedder*, because neither the Law Firm nor its clients is under investigation here.

---

[1] The tax court opinions cited by the government are even less on point. *Barrister Equip. Assoc. Series #115 v. C.I.R.*, No. 23263-89, 1994 WL 172749 (U.S. Tax Court May 9, 1994), involved admissibility at trial of other conduct of the same promoter. The government's reliance on *Brannen v. C.I.R.*, 78 T.C. 471 (1982), *aff'd*, 722 F.2d 695 (11th Cir 1984) (cited incorrectly as F.3d) is confounding, and the government's failure to provide a pinpoint citation to the allegedly relevant part of the 52-page tax court opinion violates MSK Civil Practice Standard II.D.2.

## CONCLUSION

The Court should reject the IRS's attempt to compel the Law Firm to provide private third-party information that has no potential relevance to determining the liability of the taxpayer under investigation.

Respectfully Submitted,

*/s/ Sean Connelly*
Sean Connelly
sconnelly@litigationcolorado.com
Michael Rollin
mrollin@litigationcolorado.com
HOFFMAN REILLY & POZNER LLP
511 Sixteenth Street, Suite 700
Denver, Colorado 80202
Tel:    303-893-6100
Fax:   303-893-6110

*Attorneys for Respondent*

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of October, 2005, I electronically filed the foregoing **OPPOSITION TO PETITION TO ENFORCE INTERNAL REVENUE SUMMONSES** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

W. Carl Hankla
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Benn Franklin Station
Washington D.C. 20044-0683
w.carl.hankla@usdoj.gov

Mark S. Pestal, AUSA
U.S. Attorney's Office
1225 17th Street
Denver, CO 80202
mark.pestal@usdoj.gov
(BY SEPARATE EMAIL)

*/s/ Sean Connelly*